UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HOLLIS J. LARSON,

                           Plaintiff,

Civil No. 23-1823 (JRT/DJF)

v.

MINNESOTA DEPARTMENT OF HUMAN SERVICES; MINNESOTA SEX OFFENDER PROGRAM; and JODI HARPSTEAD, *DHS Commissioner*; NANCY JOHNSTON, *MSOP's Executive Director*; TERRANCE KNEISEL, *MSOP's Facility Director*; JOHN BARRY, *MSOP's Medical Director*; ELIZABETH PETERSON, *MSOP's Assessment Department Director*; GARY ANKARLO, *MSOP Psychologist*; BLAKE CAREY, *MSOP Group Supervisor*; DAVID MILES, *MSOP Clinical Director*; KATIE MACDOWELL, *MSOP Clinical Director*; DAVID LINDLBAUER, *MSOP Primary Therapist*; KAYLA TAYLOR, *MSOP Primary Therapist*; MICHAEL WOODS, *State Ombudsman for Mental Health/Developmental Disability*; NICOLE BODER, *MSOP's Health Services Director*; KRISTA GILPIN, *MSOP Registered Nurse*; ANDREW CHRISTENSEN, *DHS ADA Coordinator*; *all in their personal and individual capacities*,

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**

                         Defendants.

      Hollis J. Larson, MSOP, 1111 Highway 73, Moose Lake, MN 55767, *pro se* Plaintiff.

Sarah L. Krans, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1400, St. Paul, MN 55101, for Defendant Michael Woods.

Morgan Alexander, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for Defendants.

Plaintiff Hollis J. Larson filed this action against the Minnesota Department of Human Services ("DHS"), the Minnesota Sex Offender Program ("MSOP"), and various MSOP/DHS officials in their individual and official capacities, as well as Michael Woods, a regional ombudsman not employed by DHS or MSOP, alleging broadly that his post-traumatic stress disorder ("PTSD") went undiagnosed for many years while he was committed at the MSOP facility in Moose Lake, Minnesota. Magistrate Judge Dulce J. Foster filed a report and recommendation ("R&R") recommending that most of Larson's claims be dismissed but that his claim for unlawful punishment against the DHS Defendants in their official capacity and his discrimination claims against DHS continue. Larson filed a very broad objection. The DHS Defendants respond to Larson's objections but do not object to the Magistrate Judge's recommendations that four claims proceed: the official capacity unlawful punishment claim against the DHS Defendants and all three disability discrimination claims against DHS. Without any objections, the Court will allow those claims to proceed. Reviewing the remainder of the R&R, the other claims fail to survive the motions to dismiss. Accordingly, the Court will overrule Larson's objections and adopt the entirety of the R&R. The claims against Woods and MSOP will be dismissed. The claims against the DHS Defendants in their individual capacity will be dismissed. The

official capacity unlawful punishment claim, claim 1, against the DHS Defendants and the disability discrimination claims, claims 4–6, against DHS will proceed.

## BACKGROUND

### I. FACTS

Neither party objects to the R&R's comprehensive factual background so the Court will adopt it in full. (R. & R. at 2–11, May 16, 2024, Docket No. 78.) The Court will only briefly summarize the relevant facts here.

Larson is currently civilly committed at the MSOP facility in Moose Lake. (Am. Compl. ¶ 1, Oct. 6, 2023, Docket No. 30.) During his time at MSOP, he has filed several complaints against various defendants alleging mistreatment and denial of rights. *E.g.*, *Larson v. MSOP, et al.*, No. 13-1074, 2024 WL 448305 (D. Minn. Feb. 6, 2024). In addition to Larson's individual actions, a large class action, of which Larson was a member, addressed the conditions at MSOP. *Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017) ("*Karsjens I*"); *Karsjens v. Lourey*, 988 F.3d 1047 (8th Cir. 2021) ("*Karsjens II*"); *Karsjens v. Harpstead*, 74 F.4th 561 (8th Cir. 2023) ("*Karsjens III*"), *cert. denied*, 144 S.Ct. 814 (2024). Nonetheless, Larson filed the current action raising new allegations surrounding his treatment at MSOP. (*See generally* Am. Compl.)

Here, Larson's allegations center around the diagnosis and treatment of his PTSD. (Am. Compl. ¶¶ 24–34, 38, 42, 48–49, 54–58, 63, 65, 72, 78, 89, 94.) While Larson mostly makes generalized claims against all the Defendants, his Amended Complaint does contain some specific allegations. (*See generally* Am. Compl.)

Katie MacDowell features as the object of many accusations. Larson charges MacDowell with misdiagnosing his PTSD as "various 'diagnoses'" despite Larson providing her with hospital records noting a Traumatic Brain Injury ("TBI") and a list of his physical and psychological trauma. (*Id.* ¶¶ 24–27.) Larson alleges that MacDowell intentionally ignored the information Larson presented and refused to do a PTSD diagnostic checklist. (*Id.* ¶¶ 28–31.) He also claims that while MacDowell made "Incident Reports," she did not report numerous events of Larson smearing feces on cell walls and himself and even eating feces on one occasion. (*Id.* ¶¶ 40–41.) Larson further alleges that MacDowell is not a licensed psychologist but rather a clinical social worker working under "another MSOP employee's license." (*Id.* ¶¶ 35–36.)

After five years of misdiagnosis, Larson claims he was properly diagnosed with PTSD by "*actual* psychologist" Gary Ankarlo based on the same information available to MacDowell, except for one additional TBI in 2019. (*Id.* ¶¶ 32–34, 49.) Larson alleges that his delay in receiving the correct diagnosis exacerbated his PTSD symptoms. (*Id.* ¶¶ 42, 58.)

Apart from the misdiagnosis and delay, Larson claims that MSOP punished him for manifestations of his undiagnosed PTSD. (*Id.* ¶¶ 57–58, 88, 92–93, 97, 106.) He describes receiving disciplinary reports after exhibiting PTSD symptoms, which precluded him from fully accessing MSOP's facilities and treatment programs. (*Id.* ¶¶ 57–58, 60.) Another

alleged result of Larson's delay in diagnosis was significant time spent in solitary confinement, including 24 of the last 30 months. (*Id.* ¶¶ 58, 70, 81, 85, 101.)

In addition to allegations of punishment, Larson alleges that he has not received his desired care for his PTSD. (*Id.* ¶¶ 57, 60, 67–68, 95.) He requested treatment in the form of eye movement desensitization and reprocessing ("EMDR") therapy and neurofeedback but has yet to receive those treatments because the Moose Lake facility is ill-equipped. (*Id.* ¶¶ 57, 73.) Larson submitted a request, later denied by Kristin Gilpin and Nicole Boder, to be transferred to the MSOP facility in St. Peter, Minnesota as it is better suited to provide treatment. (*Id.* ¶¶ 63–64.) While neuropsychological assessments and other screenings have been approved for Larson, Elizabeth Peterson allegedly paused Larson's neuropsychological assessments because Larson was placed in a high security area. (*Id.* ¶¶ 94–95.) Larson notified Michael Woods and the Adult Abuse Hotline of MSOP's alleged withholding of treatment, but he has not yet heard a response. (*Id.* ¶ 79.)

Larson describes his PTSD as a disability that severely limits his ability to care for himself. (*Id.* ¶¶ 70, 77–78.) For his disability, he sought reasonable accommodations under the Americans with Disabilities Act ("ADA"). (*Id.* ¶ 54.) Gilpin and Boder denied this request as well. (*Id.* ¶ 55.) Larson sought to appeal this decision, but in doing so, he alleges that Gilpin and Boder intentionally omitted relevant information. (*Id.* ¶ 74.)

Nonetheless, Larson filed an ADA Modification Appeal Request, and Andrew Christensen denied that appeal. (*Id.* ¶ 76.)

In response to Larson's repeated requests for treatment and his ADA reasonable accommodations appeal, he claims many defendants retaliated against him and increased punishments. (*Id.* ¶¶ 75, 81, 87, 102, 106, 114.) He further alleges that these defendants established "prison-like policies" beyond what was reasonably necessary to serve the purpose of confinement. (*Id.* ¶¶ 80, 84, 111, 115.) Larson states that the thirteen years of punishment he endured resulted in physical and emotional injuries. (*Id.* ¶¶ 92, 107.)

## II.     PROCEDURAL HISTORY

Larson's Amended Complaint raises ten causes of action: (1) Violations of Due Process – Unlawful Punishment, (2) First Amendment Retaliation, (3) Failure to Train and Supervise, (4) Disability Discrimination, (5) Violation of Section 504 of the Federal Rehabilitation Act ("RA"), (6) Violation of the Minnesota Human Rights Act ("MHRA"), (7) Retaliation and Coercion, (8) Denial of Treatment for Serious Medical Need, (9) Negligence, and (10) Supplemental State Torts against many different defendants. (*Id.* ¶¶ 120–160.) The defendants can be grouped into two categories. Michael Woods is employed as a state ombudsman for mental health/developmental disability. (*Id.* ¶ 18.) The remaining defendants, Jodi Harpstead, Nancy Johnston, Terrance Kneisel, John Barry, Elizabeth Peterson, Gary Ankarlo, Black Carey, David Miles, Katie MacDowell, David Lindlbauer, Kayla Taylor, Nicole Boder, Krista Gilpin, and Andrew Christensen are officials

of DHS or MSOP (collectively "DHS Defendants"). (*Id.* ¶¶ 7–17, 19–21.) Larson brings the claims against all the defendants in their individual and official capacities. (*Id.* ¶ 22.)

Claims 1, 2, and 7–10 are brought against all the defendants. (*Id.* ¶¶ 121, 124149, 152, 155, 159.) Claim 3 includes all the defendants except Ankarlo, Miles, Taylor, Woods, Boder, Gilpin, and Christensen. (*Id.* ¶ 127.) Claims 4–6 are alleged only against DHS and MSOP. (*Id.* ¶¶ 134, 139, 144.) All the defendants moved to dismiss. (Woods Mot. to Dismiss, Nov. 30, 2023, Docket No. 58; Mot. to Dismiss, Dec. 1, 2023, Docket No. 66.) TheMagistrate Judge recommended granting Woods's motion and dismissing all claims against Woods. (R. & R. at 39.) In addition, the Magistrate Judge recommended granting in part and denying in party the DHS Defendants' motion to dismiss, allowing claim 1 for declaratory and injunctive relief to proceed against DHS Defendants acting in their official capacity and allowing claims 4–6 against only DHS. (*Id.* at 39–40.)

Larson objected to the R&R mostly on the ground that the record is insufficiently established. (*See* Pl.'s Obj., June 3, 2024, Docket No. 79.) Larson challenged the recommended dismissal of claims against Woods claiming he did allege personal involvement by Woods. (*Id.* at 1.) He also disagreed with the Magistrate Judge's recommendation as to the DHS Defendants by restating previous arguments or claiming a misunderstanding by the Magistrate Judge. (*Id.* at 2–3.) All the defendants responded to Larson's objections but do not themselves object to the R&R. (Woods Resp. to Obj., June 11, 2024, Docket No. 84; Resp. to Obj., June 17, 2024, Docket No. 85.)

-7-

**DISCUSSION**

**I.      STANDARD OF REVIEW**

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774 at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3). When reviewing a properly objected to portion of an R&R, the Court will review the case from the start, as if it is the first court to review and weigh in on the issues. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable."). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

A document filed by a pro se litigant is to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Eighth Circuit has liberally construed otherwise general pro se objections to R&Rs and required de novo review of all alleged errors. *See Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). However, "pro se litigants are not excused from

failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

## II. ANALYSIS

As Larson is pro se, the Court will liberally construe his general objections and review de novo his Amended Complaint. However, some objections do not warrant de novo review even when made by a pro se plaintiff. Even pro se pleadings must provide sufficient facts under Federal Rule of Civil Procedure 8(a) to put defendants on notice. *Erickson*, 551 U.S. at 93; *Gerstner v. Sebig, LLC*, 386 F. App'x 573, 575 (8th Cir. 2010). Therefore, the Court will not review claims 9 and 10 further because the Court finds no clear error in the Magistrate Judge's recommended dismissal and Larson simply states that more factual development is needed. The Court will also not review DHS Defendants' qualified immunity, official capacity damages, or the discrimination claims[1] because those portions of Larson's objections align with the Magistrate Judge's conclusions and thus are objections in name only.

The Court will clarify that the Magistrate Judge recommended that MSOP as an entity be dismissed because it is not an entity that can be sued but is rather a program that DHS "establishes and maintains." Minn. Stat. § 246B.02; *Sorenson v. Minnesota*, No.

---

[1] The Magistrate Judge indicated dismissal would be appropriate if Larson predicated his discrimination claims on improper treatment. Larson objects to this conclusion. Because the Court is unaware specifically on which bases Larson brings his discrimination claims, and the claims survive the motion to dismiss, the Court can address these potential issues as they arise.

21-671, 2021 WL 6335107, at *3 (D. Minn. Sept. 13, 2021). Because Larson maintains this action against DHS, the organization that administers the MSOP program, it will dismiss all claims against MSOP itself.

Larson's objections warranting review can be grouped into two categories, those against Woods and those against the DHS Defendants. Although many of the objections to Woods's dismissal are similar, he is distinguishable as a defendant.

### A.   Woods

Larson brought claims 1–2 and 7–10[2] against Woods in his official and individual capacities; the Magistrate Judge recommended dismissing them all. Larson objects. Of note, Woods is not employed by DHS or MSOP; rather he is a regional ombudsman with the ability to receive complaints and advocate for people in state programs for mental health treatment. Larson conflates Woods with the DHS Defendants.

Any official capacity claim fails because Woods is protected by sovereign immunity and the exception for prospective injunctive relief does not apply. The Eleventh Amendment preserves a state's sovereignty by prohibiting a federal court from exercising jurisdiction when the defendant is a state. U.S. Const. amend. XI; *EEE Minerals, LLC v. State of North Dakota*, 81 F.4th 809, 815 (8th Cir. 2023). Employees of a state acting in their official capacity function as the state under sovereign immunity. *Zajrael v. Harmon*,

---

[2] As clarified above, the Court will not review claims 9 and 10 because Larson simply objected on the basis that the factual record is underdeveloped.

677 F.3d 353, 366 (8th Cir. 2012). The Ex Parte Young doctrine provides a limited exception to sovereign immunity when the plaintiff seeks prospective relief from an ongoing violation of federal law. *Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 989–90 (8th Cir. 2022).

Larson excludes Woods from his request for injunctive relief except for the request that the Court "prohibit[] all defendants from continuing to violate . . . Larson's rights." (Am. Comp. at 30.) The prospective relief Larson seeks against Woods is too vague. *Clavin Klein Cosms. Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) (describing that broad injunctions requiring a party to follow the law contradict Federal Rule of Civil Procedure 65(d)'s required specificity). The official capacity claims against Woods fail and will thus be dismissed.[3]

The individual claims likewise fail. Larson inserts Woods into many accusations but provides no factual support to suggest that Woods had the authority to make any of the determinations Larson claims are unconstitutional. First, Larson maintains that he was unfairly punished by being placed in solitary confinement, but Woods did not play a role in Larson's placement within MSOP. Second, Larson claims retaliation for previous complaints and cases. But again, Woods did not process any of these complaints, nor did he take any of the allegedly retaliatory actions. Finally, Larson alleges that Woods

---

[3] To the extent Larson suggests sovereign immunity does not apply to an ADA claim against Woods, the discrimination claims only named MSOP and DHS as defendants.

disregarded Larson's medical needs to a level akin to criminal recklessness. However, Woods only had the authority to review actions and make recommendations to MSOP—no actual power to make treatment decisions. Minn. Stat. § 245.94. As such, none of the claims Larson brings against Woods survive because Larson has not alleged that Woods is personally responsible for any of the alleged constitutional violations. *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (stating that a claimant must allege sufficient personal involvement to sustain an individual capacity claim). Woods's alleged failure to advocate for Larson is not a constitutional violation.

Larson takes issue with the dismissal of all the claims against Woods, but Larson attributes any perceived culpability of the DHS Defendants to Woods. Woods, however, can only advise MSOP of complaints and make recommendations, and has no authority to effect change or force certain decisions. The claims against Woods do not survive and will be dismissed.

### B.   DHS Defendants

The objections to the following claims against the DHS Defendants are the only objections that require the Court's attention: (1) Individual Capacity Unlawful Punishment, (2) First Amendment Retaliation, (3) Failure to Train and Supervise, (4) ADA Retaliation, and (5) Denial of Treatment.

### 1. Individual Capacity Unlawful Punishment

Larson disagrees with the Magistrate Judge's recommendation to dismiss the individual capacity unlawful punishment claims because more discovery is required.[4] He also argues that because his injunctive relief claims are proceeding, there is an "inference" that he is suffering irreparable harm, and thus it would be improper to dismiss the individual capacity claims for damages.

However, the Magistrate Judge simply allowed the official capacity claim for injunctive relief to proceed and did not make a finding that injunctive relief was proper. The Court reaches the same conclusion. Just because Larson's claim for injunctive relief can proceed past the motion to dismiss stage does not mean that he will ultimately be successful. Further, as explained above under the state tort claims, the fact that the record should be more established does not allow a claim to survive a motion to dismiss.

Larson's individual capacity unlawful punishment claims fail because he makes no specific allegations about any defendants inflicting any particular punishments. Like the allegations lodged against Woods, Larson fails to allege sufficient personal involvement. *Beck*, 257 F.3d at 766. As such, his individual capacity unlawful punishment claims will be dismissed.

---

[4] Larson states that he is unable to handle this additional discovery without the aid of an attorney. Larson previously requested appointment of counsel, which the Magistrate Judge denied. Because Larson did not appeal that order, Larson's request to appoint counsel is not properly before the Court.

### 2. First Amendment Retaliation

A claim for First Amendment retaliation requires allegations that "(1) [the plaintiff] engaged in constitutionally protected activity; (2) the defendant took adverse action that would 'chill a person of ordinary firmness from continuing in the activity'; and (3) the defendant took the adverse action because of the plaintiff's protected activity." *Sorenson*, 2021 WL 6335107, at *5 (citing *Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 943 (8th Cir. 2016)). Here, Larson engaged in protected activities: filing complaints with MSOP and initiating federal cases. He also made sufficient showing that the alleged adverse action would create a chilling effect because he was frequently moved to different areas within the facility and deprived of access to various programming.

Where Larson's claim fails is the nexus between his protected activity and the adverse actions. Larson does not sufficiently allege that MSOP officials took actions specifically because of his repeated complaints and court actions, instead making conclusory allegations that the decisions were retaliatory. Larson also concedes his behavioral outbursts may at least partially explain his restrictive placements at MSOP. Without additional factual support connecting the protected activity and alleged adverse action, Larson's First Amendment retaliation claim fails and will be dismissed.

### 3. Failure to Train and Supervise

Liability for failure to train or supervise arises when a supervisor "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial

-14-

action; (4) proximately causing injury to [the plaintiff]." *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (internal quotation marks omitted). Ultimately, Larson would need to allege that the supervisors knew the training policies and supervision were likely to result in a constitutional violation. *Id.* at 356. He fails to do so in his Amended Complaint.

The only allegation that arguably falls under this claim is that MacDowell was insufficiently supervised or trained because she was only a licensed as a social worker and not as a psychologist. Larson also references the policy that MSOP allows non-psychologists to work under other employee's licenses. Larson claims that, standing alone, the fact that MacDowell is not a licensed psychologist makes her unqualified to make any mental illness diagnoses. But Larson does not support this contention. Further, Larson alleges that the policy which allowed clinical social workers to practice under another employee's license satisfied the knowledge requirement that actions were likely to result in a constitutional violation. That allegation is also unsupported. The Court has no basis for concluding that a diagnosis from a clinical social worker rather than a fully licensed psychologist is per se unconstitutional. Even liberally construed, without additional information, Larson's failure to train and supervise claim cannot survive and will be dismissed.

### 4. ADA Retaliation Claim

To adequately plead an ADA retaliation claim, Larson needed to allege that "(1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and protected action."

*Rinehart v. Weitzell*, 964 F.3d 684, 689 (8th Cir. 2020). Here, Larson alleges that he filed an ADA appeal, a protected activity, *id.* at 689 n.6, and that in retaliation Gilpin and Boder omitted information from the appeal to justify its denial. Taking those allegations as true, the Court finds the omission problematic. The behavior, though, does not meet the standard for adverse action in an ADA retaliation claim. Adverse action under the ADA must be serious enough to dissuade the reasonable person from engaging in that protected conduct. *Cf. Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 942–43 (8th Cir. 2019) (discussing ADA retaliation in the employment context). While Larson alleges that the removal or omission of the information from his ADA appeal dissuaded him from filing any more appeals, his hesitation to appeal is insufficient. Instead, it must be enough to dissuade the reasonable person. *Id.* Here, the Court concludes that the conduct of omitting information in an ADA appeal would not dissuade the reasonable person from filing ADA accommodation requests or appeals and thus does not constitute an adverse action. Without an adverse action, Larson's ADA retaliation claim necessarily fails. The Court will dismiss claim 7.

### 5. Denial of Treatment

Larson's denial of treatment is properly construed as arising under the due process clause of the Fourteenth Amendment. *Senty-Haugen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006); *see also Karsjens II*, 988 F.3d at 1051–52. The standard for deliberate indifference under the Fourteenth Amendment is the same as under the Eighth Amendment. *Senty-Haugen*, 462 F.3d at 889. Deliberate indifference is a higher standard

than gross negligence, and the plaintiff must show that a known excessive risk to health was disregarded. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). To meet the deliberate indifference standard, a plaintiff must show a "mental state akin to criminal recklessness." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (citing *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2008)). Dissatisfaction with medical treatment and negligent misdiagnosis do not rise to the level of deliberate indifference. *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993); *Allard*, 779 F.3d at 772.

Larson fails to make any allegations that any defendants acted with the mental state akin to criminal recklessness. He does allege that MacDowell did not diagnose him with PTSD, but that can be explained by a difference in medical opinion or a worsening condition that only warranted a diagnosis five years later. He claims that he requested transfer to a different facility to receive ESMR and neurofeedback therapy and that he did not receive approved assessments. But he also concedes that Gilpin and Boder explained that he was not a candidate for placement at the St. Peter facility and that, depending on his placement within the Moose Lake facility, some treatments and assessments were unavailable. Further, Larson relies on the times when he smeared feces on himself as evidence of deliberate indifference. Without question, incident reports were filed. Although Larson may not have liked the response, there was a response, and it was not so lacking as to amount to criminal recklessness.

Larson's objection to the Magistrate Judge's recommendation to dismiss his failure to treat claim seems to challenge the standard applied. Specifically, Larson notes that he is not an "inmate" and is entitled to "any treatment he chooses." (Pl.'s Obj. at 10.) Larson is not an inmate, but the "deliberate indifference" standard still applies to those civilly committed at MSOP. *Senty-Haugen*, 462 F.3d at 889. Larson provides no citation for his declaration that he can receive any treatment he chooses.

As pleaded, Larson's delayed treatment claims do not state a Fourteenth Amendment violation and must be dismissed.

## CONCLUSION

Woods's motion to dismiss will be granted in its entirety because he had no authority to make decisions affecting Larson. All claims against MSOP will also be dismissed because it is a program maintained by DHS and thus MSOP is not an appropriate defendant. While some claims against DHS and the DHS Defendants continue, others lack sufficient factual basis to survive. The Magistrate Judge recommended that four claims proceed: Larson's three disability discrimination claims against DHS and his one official capacity unlawful punishment claim against the DHS Defendants; Defendants did not object to those recommendations. Therefore, the Court will adopt those recommendations and allow only those four claims to proceed. The Court will dismiss all the other claims, adopt the R&R, and overrule Larson's objections.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections [Docket No. 79] to the Report and Recommendation are **OVERRULED**;

2. The Report and Recommendation [Docket No. 78] is **ADOPTED**;

3. Defendant Woods's Motion to Dismiss [Docket No. 58] is **GRANTED**;

4. DHS Defendants' Motion to Dismiss [Docket No. 66] is **DENIED in part** and **GRANTED in part** as follows:

    a. All claims against MSOP are **DISMISSED with prejudice.**

    b. All individual capacity claims against DHS Defendants are **DISMISSED without prejudice**.

    c. All official capacity claims for damages are **DISMISSED with prejudice**.

d. Only the following claims will proceed:

   i. Claim 1 seeking declaratory and injunctive relief for unlawful punishment against DHS Defendants in their official capacity; and

   ii. Claims 4–6 seeking declaratory and injunctive relief against only DHS.

DATED: September 30, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge